ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
KRISTEN M. LEE (State Bar No. 239464)
Assistant United States Attorney
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0332
    Facsimile: (213) 894-7819
    Email: Kristen.Lee@usdoj.gov

Attorneys for Patrick R. Donahoe,
Postmaster General of the United States Postal Service

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL D. BILLBERRY,<br><br>    Plaintiff,<br><br>vs.<br><br>PATRICK R. DONAHOE,<br>POSTMASTER GENERAL, UNITED<br>STATES POSTAL SERVICE,<br><br>    Defendant. | Case No. CV 11-04509 R (MRWx)<br><br>**FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Fed. R. Civ. Proc. 56]<br><br>**Hearing Date: January 28, 2013**<br>**Time:    10:00 a.m.**<br>**Ctrm:    8**<br><br>Hon. Manuel L. Real |

Defendant Patrick R. Donahoe, Postmaster General of the United States Postal Service's Motion for Summary Judgment having come on for hearing on January 28, 2013, and the Court having considered the pleadings, evidence presented, and memorandum of points and authorities, the Court makes the following Findings of Fact and Conclusions of Law:

## I. FINDINGS OF FACT

1. Plaintiff Michael Billberry was hired as a part-time flexible ("PTF") letter carrier with the USPS at the Los Alamitos, California post office on June 24, 1996. Billberry Deposition ("Billberry Dep."), Evidentiary Appendix[1] ("Evid. App.") Ex. 44, at 30:15-18.)

2. Plaintiff began working as a PTF carrier at the Bell Gardens, California, post office on July 14, 2001. (Billberry Dep., Ex. 44, at 30:24-32:21; Declaration of Kathryn J. Robinson ("Robinson Decl."), Evid. App. 5, at ¶ 10; Ex. 3.)

3. As such, Plaintiff's unit seniority date at the Bell Gardens post office was July 14, 2001. (Billberry Dep., Ex. 44, at 32:18-33:6; Robinson Decl. ¶ 11.)

4. On September 2, 2004, Plaintiff received a notice of removal for failure to follow instructions and unsatisfactory work performance. As a result of a Union grievance, Plaintiff's removal was reduced to a letter of warning. (Robinson Decl. ¶ 12b; Ex. 5; Declaration of Kerri Holmes ("Homes Decl."), Evid. App. 84, at ¶ 4b; Ex. 19.)

5. On November 12, 2004: Plaintiff received a seven day suspension for unacceptable conduct. As a result of a Union grievance, Plaintiff's suspension was reduced to a letter of warning. (Robinson Decl. ¶ 12c; Ex. 6; Holmes Decl. ¶ 4c; Ex. 20.)

---

[1] Defendant's evidentiary references are contained in a separate Evidentiary Appendix filed concurrently with this Motion and are denoted by an Exhibit number and page reference, where applicable.

6. On December 22, 2004: Plaintiff received a letter of warning for his failure to follow instructions. As a result of a Union grievance, the USPS agreed that the letter of warning would only remain active in Plaintiff's personnel file for two years. (Robinson Decl. ¶ 12d; Ex. 7; Holmes Decl. ¶ 4d; Ex. 21.)

7. On December 30, 2004: Plaintiff received a seven day suspension for his failure to follow directions. As a result of a Union grievance, Plaintiff's suspension was upheld with a finding of just cause. (Robinson Decl. ¶ 12e; Ex. 8; Holmes Decl. ¶ 4e; Ex. 22.)

8. On May 23, 2005, Plaintiff received a notice of removal for threatening his Bell Gardens Supervisor Teri Ruffin on April 12, 2005. As a result of a Union grievance and EEO contact, Plaintiff's removal was reduced to a seven day suspension. (Robinson Decl. ¶ 12g; Ex 10; Holmes Decl. ¶ 4g; Ex. 23.; Billberry Dep., Ex. 44, at 34:24-35:18; Declaration of Donald Lank ("Lank Decl."), Evid. App. 117, at ¶ 7; Exs. 28, 29.)

9. Following the alleged threatening behavior, Ms. Ruffin reported that she was uncomfortable working with Plaintiff, and the Union agreed to Plaintiff being reassigned to the Maywood, California post office as a PTF Carrier. (Billberry Dep., Ex. 44, at 34:14-36:6.)

10. On September 22, 2005, Plaintiff received a notice of removal for unacceptable conduct for failing to timely report an accident. As a result of a Union grievance, Plaintiff's removal was reduced to a seven day suspension. (Robinson Decl. ¶ 12h; Ex 11.; Holmes Decl. 4h; Ex. 25.)

11. The Maywood post office discontinued the carrier function in its facility, and Plaintiff was instructed to report to the Huntington Park, California post office as a PTF Carrier in December 2005. (Billberry Dep., Ex. 44, at 36:21-37:10; Lank Decl. ¶ 27; Ex. 42.)

**Notice of Removal**

12. On August 8, 2006, Plaintiff was questioned by Huntington Park managers about an incident of alleged misconduct which occurred on August 7, 2006, involving allegations of leaving USPS mail and property unattended. Plaintiff denied the allegations. (Robinson Decl. ¶ 12i; Notice of Removal, Ex. 12.)

13. On August 24, 2006, Plaintiff was interviewed by Huntington Park Officer in Charge Steve Lopez regarding the events of August 7, 2006. Plaintiff maintained his denial of the alleged misconduct. (Lopez Decl. ¶ 10; Ex. 12.)

14. Based on this interview, and the underlying information and evidence from a USPS investigation, OIC Lopez believed that the situation warranted Plaintiff's removal. (Declaration of Steve Lopez ("Lopez Decl."), Evid. App. 67, at ¶ 9.)

15. After learning that Plaintiff was still technically assigned to the Bell Gardens post office, Lopez directed Huntington Park Station Manager to contact the Bell Gardens OIC at the time, Art Santana, for a determination of the appropriate disciplinary action. (Lopez Decl. ¶ 11.)

16. OIC Santana reviewed the investigatory file from the events of August 7, 2006, and in consideration of Plaintiff's prior active disciplinary actions, believed that Plaintiff's employment should be terminated and made the decision to issue Plaintiff a notice of removal. (Declaration of Art Santana ("Santana Decl."), Evid. App. 71, at ¶¶ 8, 9.)

17. On September 20, 2006, Plaintiff was issued a Notice of Removal for "Unacceptable Conduct, Being Untruthful during an Official Postal Investigation, Unacceptable Work Performance, Failure to Secure Postal Vehicle, and Failure to Secure First Class Mail" ("Notice of Removal"). (Santana Decl. ¶ 9; Ex. 17.)

18. On October 17, 2006, a Union grievance regarding Plaintiff's September 20, 2006 notice of removal was resolved with the Union finding that "Management had established just cause for the Notice of Removal." (Holmes Decl. ¶ 4i; Ex. 26.)

19. Plaintiff's last day in pay status was October 11, 2006, and his termination was effective November 17, 2006. (Robinson Decl. ¶ 13; Ex. 13.)

**Non-Conversion**

20. In 2006, the USPS carrier position was comprised of part time flexible ("PTF") and full time regular carriers. A full time regular carrier who did not hold a bid assignment was classified as "unassigned." (Robinson Decl. ¶ 4.)

21. In 2006, when a full time regular letter carrier position ("route") would become available, the route was posted at the local office for existing full time carriers to bid on the available route. (Robinson Decl. ¶ 4.)

22. If no full time regular carriers bid on the specific route, the route was designated as "residual" and local office management would assign the route to any full time unassigned carrier at the office. (Robinson Decl. ¶ 4.)

23. If there were no unassigned carriers, and the position was referred to the District Personnel Services Office ("PSO") for assignment of the route to the next PTF on the local office seniority list, who would then be converted to full time regular. (Robinson Decl. ¶ 5.)

24. The PTF employee's seniority date was the date on which the employee began working at the office at which conversion was sought ("unit seniority"). (Robinson Decl. ¶ 6.)

25. The local office Postmaster or Officer in Charge had no involvement in determining who would be converted the full time regular position. (Robinson Decl. ¶ 7.)

26. When alleged discriminating official Art Santana became the Bell Gardens OIC in June 2006, he had never met Plaintiff, and was unaware that Plaintiff was still technically a Bell Gardens employee. (Santana Decl. ¶ 11.)

27. Plaintiff contends that three specific Bell Gardens employees were improperly converted instead of him. (September 22, 2006 EEO Pre-Complaint, Evid. App. Ex. 31.)

5

28. The conversion of these three employees was processed by the District Personnel Services Office on November 21, 2006. (Robinson Decl. ¶¶ 14a-c; Exs. 14-16.)

29. The Bell Gardens and Huntington Park alleged discriminating officials were not involved in making the conversion determinations for these three employees. (Robinson Decl. ¶ 7; Santana Decl. ¶ 5; Lopez Decl. ¶ 4.)

30. At the time that the Notice of Removal was issued, neither Santana was aware of Plaintiff's August 2006 EEO activity. (Lopez Decl. ¶ 12; Santana Decl. ¶ 11.)

**EEO Administrative History**

31. On June 20, 2005, Plaintiff initiated EEO contact, alleging that he was discriminated against on the basis of his race, sex, age, and in retaliation for protected activity, when he was issued a letter of removal on May 23, 2005, for threatening his Bell Gardens supervisor. (Lank Decl. ¶ 7; Ex. 28).

32. Plaintiff's 2005 EEO matter was settled on July 27, 2005, prior to his filing a formal EEO complaint, and Plaintiff's termination was reduced to a 7-day suspension. (Lank Decl. ¶ 7; Ex. 29.)

33. On August 4, 2006, Plaintiff initiated EEO contact and submitted an EEO Pre-Complaint Counseling form dated August 14, 2006, alleging that he was discriminated against on the basis of his race and in retaliation for his prior 2005 EEO activity when he was not converted to a full time regular carrier on July 31, 2006. (Lank Decl. ¶ 8; Ex. 30.)

34. On September 22, 2006, Plaintiff initiated further EEO contact, alleging that the September 20, 2006 Notice of Removal was discriminatory on the basis of his race, sex, age, and in retaliation for his prior August 2006 EEO activity. (Lank Decl. ¶ 8; Ex. 31.)

35. The two EEO claims were consolidated into a single claim (Agency claim number 4F-900-0261-06.) (Lank Decl. ¶ 10.)

36. Plaintiff certified that he received a copy of USPS Publication 133, "What You Need to Know About EEO," ("Pub. 133") with both his 2005 and 2006 EEO pre-complaint submissions and testified that such EEO information was also posted on a bulletin wall at the postal facilities. (Lank Decl. ¶ 6, 11; Exs. 28, 31; Billberry Dep., Ex. 44, at 47:19-48:8.)

37. Pub. 133 explains the EEO process in detail, including notifying the employee that if their claim is not resolved within 90 calendar days of initial EEO contact, the EEO ADR Specialist <u>must</u> <u>issue</u> a Notice of Right to File a Formal Complaint. (Lank Decl. ¶ 6; Ex. 27.)

38. Plaintiff had initiated numerous other EEO claims, and had the EEO office phone number available. (Billberry Dep., Ex. 44, at 48:14-54:11.)

39. On November 1, 2006, the parties participated in a mediation pursuant to the alternative dispute resolution process ("REDRESS") process, but no agreement was reached. (Lank Decl. ¶¶ 12, 13.)

40. On August 1, 2007, Plaintiff filed an "appeal" with the EEOC Office of Federal Operations ("OFO"), requesting to file a formal EEO complaint. (Lank Decl. ¶ 17; OFO Appeal, Ex. 34.)

41. In the appeal, Plaintiff admits that "shortly []after," the November 1, 2006 mediation, he was notified by both Union EEO representative Dorothy Davis and EEO Specialist Donald Lank, that a Notice to File Individual Complaint had been issued to him. (OFO Appeal, Evid. App., Ex. 34.)

42. The agency responded to the appeal, attaching a copy of the notice of rights that was sent to Plaintiff on November 1, 2006. (Lank Decl. ¶ 19; Ex. 35.)

43. Plaintiff submitted a sworn affidavit to the EEOC dated January 10, 2007, in which Plaintiff attests that he was "told by his EEO representative that a notice to file a formal complaint was mailed to him." (Lank Decl. ¶27; Ex. 42.)

44. On November 10, 2007, Plaintiff filed a formal administrative EEO complaint of discrimination. (Lank Decl. ¶22; Ex. 38.)

45. Plaintiff's formal EEO Complaint alleges race discrimination and retaliation for prior EEO activity, Case No. 4F-900-0187-04, filed in 2004, and "also June 2005." (Formal EEO Cmplt., Evid. App., Ex. 38.) The EEO Complaint made no claim of sex discrimination. (Lank Decl. ¶ 22; Ex. 38.)

46. On December 10, 2007, the agency dismissed Plaintiff's claim as untimely pursuant to Title VII. (Lank Decl. ¶ 23; Ex. 39.)

47. On January 30, 2009, the EEOC OFO remanded Plaintiff's EEO Complaint to the agency for further processing. (Lank Decl. ¶ 24; Ex. 40.)

48. On February 18, 2009, the agency sent Plaintiff an Acknowledgment and Acceptance of Remanded claim, setting forth the issues to be investigated as: "discrimination based on Race (Black) and Retaliation (Prior EEO Activity), when: 1) On July 31, 2006, [Plaintiff] was not converted from a Part Time Flexible) Carrier to a Regular Carrier; and 2) On September 22, 2006, [Plaintiff] received a Letter of Removal effective November 17, 2006." The Acknowledgment stated that if Plaintiff did not agree with the defined accepted issues, that he must provide a written response specifying the nature of the disagreement within seven (7) days of receipt of the Acknowledgement. (Lank Decl. ¶ 25; Ex. 41.)

49. Plaintiff never provided a writing disagreeing with the accepted issues, never raised any allegation of sex discrimination during the investigation or gave any information such that the agency would have believed that sex discrimination was a basis for his complaint. (Lank Decl. ¶ 26.)

## II. CONCLUSIONS OF LAW

1. A motion for summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine dispute of material fact, the nonmoving party must go beyond the

8

pleadings and identify facts which show a genuine dispute for trial. Id. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (Only genuine disputes of fact that might affect the outcome of the suit will properly preclude the entry of summary judgment.)

  2. A nonmoving party cannot defeat summary judgment by relying on allegations in the complaint, or with unsupported conjecture or conclusory statements. Hernandez v. Spacelabs Med., Inc., 343 F.3d 1107, 1112 (9th Cir. 2003); Anderson, 477 U.S. at 252 (The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient.") Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine [dispute] for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

  3. The burden of proof in an employment discrimination case is:

  (1) Plaintiff must carry the initial burden of proof by establishing a prima facie case of discrimination;

  (2) If plaintiff successfully establishes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory explanation for the action taken; and

  (3) If defendant articulates a legitimate nondiscriminatory explanation, the burden shifts back to plaintiff to prove, by a preponderance of the evidence, that the defendant intentionally discriminated against him, and accordingly, that the explanation articulated by defendant is actually a pretext or ruse for discrimination. See St. Mary's Honor Ctr., et al., v. Hicks, 509 U.S. 502, 507 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden of going forward remains with plaintiff. Id.

4. The McDonnell Douglas framework also governs retaliation claims arising under Title VII. See Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1140 (9th Cir. 2001) ("We apply a system of shifting burdens in Title VII discrimination and retaliation cases." (citing McDonnell Douglas, 411 U.S. at 802-803)).

5. Under Title VII, federal employees must exhaust their administrative remedies before the district court has jurisdiction over their claims. B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099 (9th Cir. 2002); Vinieratos v. United States, 939 F.2d 762, 767-68 (9th Cir. 1991); Rivera v. U.S. Postal Service, 830 F.2d 1037, 1039 (9th Cir. 1987), cert. denied, 486 U.S. 1009 (1988). Only after the administrative remedies have been exhausted may the employee seek judicial review. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §1614.105 et seq.

6. To begin the EEO process, a claimant must initiate contact with an EEO counselor within forty-five days of a discriminatory incident. 29 C.F.R. §1614, 105(a)(1). If no resolution is reached through the counseling process within 90 days from the initiation of EEO counseling, the EEO counselor will notify claimant of his right to file a formal discrimination complaint. 29 C.F.R. §1614.105(a)(2)(d). The claimant then has *fifteen days* from the date he receives the notice to file an EEO complaint. Id. (emphasis added). If he fails to timely do so, his claim is barred. 29 C.F.R. § 1614.106(b).

7. The timely filing of a charge of discrimination with the EEO "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Transworld Airlines, Inc., 455 U.S. 385, 393 (1982). However, the equitable tolling doctrine is not appropriate in cases where a claimant "failed to exercise due diligence in preserving his legal rights," or otherwise engaged in "a garden variety claim of excusable neglect." Irwin v. Veterans Admin., 498 U.S. 89, 96 (1990), citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984). Such tolling would allow

litigants to enjoy "manipulable open-ended time extension[s] which could render the statutory limitation meaningless. Scholar v. Pacific Bell, 963 F.2d 264, 268 (9th Cir. 1992) (citations and internal quotations omitted), cert. denied, 506 U.S. 868 (1992).

8. Tolling has been applied to excuse a claimant's failure where they had neither *actual* nor *constructive notice* of the filing deadlines. Leorna v. United States Dept. of State, 105 F.3d 548, 551 (9th Cir. 1997). However, once a claimant has "gained the 'means of knowledge' of [his] rights," he can be charged with constructive knowledge of the law's requirements. See Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1050 (9th Cir.), cert. denied, 484 U.S. 986 (1987).

9. The scope of the federal employee's administrative exhaustion and thus of subject matter jurisdiction, is determined by the "scope of the EEOC charge and investigation." Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003); see 42 U.S.C. § 2000e-16(c); 29 C.F.R. §1614.105 *et seq*.

10. The Ninth Circuit has unequivocally held that administrative proceedings must be concluded for there to be "final action" within the meaning of 42 U.S.C. § 2000e-16; Cosgrove v. Bolger, 775 F.2d 1078, 1080 (9th Cir. 1985). Thus, if an employee abandons a claim in the administrative process before completion, he has failed to exhaust his administrative remedies and the claim must be dismissed. Vinieratos, 939 F.2d at 769; Rivera, 830 F.2d at 1039. In Vinieratos, the Ninth Circuit explained:

> [A]n administrative rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts. . . . Where a federal employee obstructs the smooth functioning of a properly elected administrative process and abandons that process to pursue a remedy elsewhere, he fails to exhaust his chosen remedy and thereby forecloses judicial review.
> Vinieratos, 939 F. 2d at 771.

11. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he was subjected to an adverse action; and (3) there was a causal connection between the protected activity and the adverse action. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002); Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).

12. To demonstrate a causal connection, a plaintiff bears the burden of presenting "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." Cohen, 686 F.2d at 796; Miller v. Fairchild Industries, Inc., 797 F.2d 727, 731 (9th Cir. 1986). Such inference may be drawn from the "proximity in time between the protected action and the allegedly retaliatory employment decision." Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003). However, in order to establish such nexus, the temporal proximity must be "very close" in time. See Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001) (holding that a 20-month delay between protected conduct and adverse action indicated a lack of causal connection), citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (finding a 3-month period insufficient to establish causal connection). Additionally, timing alone will not necessarily show causation; there must be evidence that, "but for" the protected activity, there would have been no adverse action. Villiarimo, 281 F.3d at 1064-65. "A plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." Raad, 323 F.3d at 1197.

13. To establish a *prima facie* case of disparate treatment discrimination, a plaintiff has the burden to show that: (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated persons outside the protected class were treated more favorably. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222

(1998); Villiarimo v. Aloha Is. Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002); Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988).

14. Title VII plaintiffs alleging disparate treatment must demonstrate, at the least, that they are similarly situated in all material respects to those they contend were treated more favorably. See, e.g., Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006).

15. When the alleged discriminating officials are members of the same protected class as the plaintiff, there is an inference against discrimination. See, e.g., Coghlan v. American Seafoods Co., LLC, 413 F.3d 1090, 1096-97 (9th Cir. 2005) (affirming summary judgment for employer where the person who engaged in the allegedly discriminatory conduct was of the same protected category as the plaintiff.)

16. Under the McDonnell Douglas burden-shifting framework, if a plaintiff can establish a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802-804. The shift imposes on the employer a burden of production, not persuasion; the ultimate burden of persuasion remains at all times with the plaintiff. See Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Where an employer satisfies this burden of production, "[t]he presumption of [unlawful discrimination] . . . simply drops out of the picture[,]" thereby forcing the plaintiff to prove that the employer's explanation is pretextual and, thus, unworthy of credence. Burdine, 450 U.S. at 256, quoting St. Mary's Honor Ctr., 509 U.S. at 510-11.

17. Where evidence of pretext is circumstantial rather than direct, the plaintiff must present "specific" and "substantial" facts to show that there is a triable issue in order to withstand summary judgment. See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998). Plaintiff has the ultimate burden of persuasion, and must offer specific and significantly probative evidence that Defendant's intentional purpose was to take action against him because of his race, sex, or in retaliation for protected activity. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 152-54 (2000) (the ultimate question in every employment discrimination case is whether the plaintiff was

the victim of intentional discrimination); St. Mary's, 509 U.S. at 508; U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-15 (the ultimate factual inquiry is whether the defendant intentionally discriminated against plaintiff). Moreover, Plaintiff must do more than simply make out a *prima facie* case and attack the credibility of Defendant's witnesses. Id.

Any conclusions of law erroneously designated as an uncontroverted fact is incorporated herein.

DATED: Feb. 11, 2013

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

PRESENTED BY:
ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

*/ s / Kristen M. Lee*
KRISTEN M. LEE
Assistant United States Attorneys
Attorneys for Defendant
Patrick R. Donahoe, Postmaster General,
United States Postal Service